IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

**Civil Action No. 05-cv-01018-RPM**

DENNIS DUNIGAN,

        Plaintiff,

v.

JO ANNE B. BARNHART,
Commissioner of Social Security,

        Defendant.

_____

MEMORANDUM OPINION AND ORDER
_____

On May 1, 2002, Dennis Dunigan ("Dunigan") filed an application for disability insurance benefits, claiming a disability beginning March 1, 2001. The application was denied and the claimant requested review. On May 27, 2002, he completed a questionnaire, listing his medications prescribed by a psychiatrist at the Center for Medical Health in Gunnison, Colorado, and a daily activities questionnaire. (R. 51-59). Dunigan amended his application to request a closed period of disability from March 1, 2001, through September, 2003.

An Administrative Law Judge ("ALJ") held a hearing on November 23, 2004, and issued a denial decision on December 6, 2004. After the Appeals Council denied a request for review, the ALJ's decision became the final decision which is now under judicial review pursuant to 42 U.S.C. § 405(g). Because the ALJ failed to perform his duty to investigate the facts and develop the arguments both for and against granting benefits, the decision is vacated and this matter is remanded for that purpose. *Sims v.*

*Apfel,* 530 U.S. 103, 111 (2000).

It is difficult to determine whether the ALJ's decision has the support of substantial evidence of record because the narrative findings and the summary of findings are written in the present tense.  There is no dispute that Dunigan was able to engage in substantial gainful activity after September, 2003.  In fact, he demonstrated a tenacity in overcoming his impairments through self-education and initiative in developing his own business before the hearing.  The ALJ improperly considered those facts in  failing to recognize that the issue was whether Dunigan was unable to work at any occupation for any continuous twelve month period between March 1, 2001, and September, 2003.

Dunigan was born on May 24, 1957.  He left high school to enlist in the United States Marine Corps where he served for three years.  He worked as a construction plumber and sustained an on-the-job injury to his right hand, wrist and arm on April 7, 1999.  He continued to work, despite this injury to his dominant right extremity, until March 1, 2001, when Dr. Randall Viola, an authorized worker's compensation surgeon took the claimant off work.  An attempted surgical repair on May 30, 2001, was not successful and on February 15, 2002, a tendon was surgically removed with follow-up surgery to remove hardware on June 6, 2002.

The ALJ found that Dunigan has a severe impairment of his right upper extremity and it is not disputed that it does not equal a listed impairment in Appendix 1, Subpart P, Regulation No. 4.  The ALJ also determined that Dunigan "does not have a 'severe' mental impairment." (R. 15).  The ALJ based that determination on the opinion of a

state agency physician and then applied Section 404.15 of Regulation No. 4 and Rule 202.21, Table No. 2 of Appendix 2, Subpart P.  Regulation No. 4 as directing the conclusion "that, considering the claimant's residual functional capacity, age, education, and work experience, he is not disabled." (R.18).  The ALJ then found that Dunigan has not been under a disability "at any time since March 1, 2001, and continuing through the date of this decision."  (R. 18).

Dunigan's inability to return to his job as a plumber caused emotional stress related to his inability to support his wife and her two children.  He was hospitalized at the Midwestern Colorado Mental Health Center ("Center") in Montrose, Colorado, in September, 2001, and was diagnosed by psychiatrist Robert Duncan, M.D., with a major depressive episode, in remission with medication in October, 2001.  Dr. Constance Corson, a staff psychiatrist at the Center also supervised treatment for him.  He was again hospitalized in Montrose Memorial Hospital in January, 2003, on referral by Dr. Corson, as an emergency admission with a potential for suicide.  (R. 219).  The report of this admission refers to auditory and visual hallucinations, paranoia, obsessions/compulsions, and anxiety/phobia.  The record contains treatment notes of a therapist, Carol Paradis-Ibael, M.A., and Dr. Corson.  They saw Dunigan and supervised his medication during 2002.

On January 14, 2003, Dunigan left the hospital and went to Oklahoma to live with his brothers, joined by his wife and her children.  He stopped taking medications and recovered his mental and emotional stability without further medical assistance.  He studied for and obtained a GED and a Master Plumber license during that time and

found work as a roofer and then self-employment as a plumber.

The ALJ discussed the medical evidence relevant to mental and emotional impairments in the following paragraph:

> The medical evidence also reflects that the claimant was diagnosed with a major depressive episode, in partial remission, with Effexor, without any significant side effects in October 2001.  He had a period of psychiatric hospitalization from September 11 to September 17, 2001 for adjustment disorder with mixed anxiety and depressed mood.  The Medical records from Midwestern Colorado Mental Health Center also reflect that the claimant was not compliant in taking prescribed medication for his affective disorder, with a corresponding increase in symptoms.  Nevertheless, the subsequent mental health treatment notes document continual overall improvement in the claimant's mental status (Exhibits 10F, 11F, and 14F).  (R. 15).

The ALJ then adopted the opinion of the state agency physician in finding that the claimant "does not have a 'severe' mental impairment."  The opinion adopted is that of Jason Richter, M.D., as expressed in a form, SSA-2506-BK, under date of July 8, 2002.  That form contains 14 pages.  On the basis of whatever medical records he reviewed, and without seeing Dunigan, Dr. Richter completed only 2 pages and a handwritten note that is hardly legible.  Richter marked boxes on page 11 that the functional limitations were mild with no episodes of decompensation.  Reliance on this report was unreasonable.  It provided only conclusions and it was written before the January, 2003, hospitalization.

The transcript of the ALJ hearing is a mere 21 pages and the ALJ asked but a few questions.  Dunigan described his hallucinations and his emotional experiences in response to his lawyer's questions, with no follow up by the ALJ.

In his decision, the ALJ relied on the claimant's answers to a pain questionnaire

in describing his daily activities and did not ask any questions on that subject at the hearing.  The ALJ found the "claimant's testimony was not credible regarding his symptomatology and resulting limitations" without any specifics.  The ALJ said that Dunigan had a "mental episode" for a brief time in the fall of 2001 without mentioning the hospitalization in January, 2003, or the course of treatment by two psychiatrists and a therapist.  The ALJ said that earning a high school equivalency diploma and getting a Master Plumber's license was not compatible with lasting mental limitations, without recognizing that those accomplishments were achieved after the period of disability at issue.

Upon this record, it is apparent that the ALJ failed to give a fair evaluation of the claim for disability for the period from March 1, 2001, to September, 2003.  It is therefore

ORDERED, that the decision is vacated and the matter is remanded for further proceedings.

DATED: April 27th, 2006

>BY THE COURT:
>
>s/Richard P. Matsch
>
>_____
>Richard P. Matsch
>Senior District Judge